UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY A. SULLIVAN
and GUY STERLING WILSON,

        Plaintiffs,

v.                                        Case No. 2:04-cv-110
                                          HON. GORDON J. QUIST

PATRICIA CARUSO, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs Jeffrey A. Sullivan, an inmate at the Baraga Maximum Correctional Facility (AMF), and Guy Sterling Wilson, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants MDOC Director Patricia Caruso, MDOC STG Coordinator Robert Mulvaney, MDOC Step III Grievance Respondent James Armstrong, LMF Warden Barbara Bouchard, LMF Inspector Lyle Rutter, Cotton Correctional Facility (JCF) employee Leland Putnam, AMF Warden Timothy Luoma, AMF Inspector Daniel Ezrow, Standish Correctional Facility (SMF) Warden Thomas Birkett, SMF Sergeant A. McNamara, Huron Valley Correctional Facility (HVM) Warden Kenneth Romanowski, and HVM Inspector Don Prough. After an initial review of the complaint, only plaintiffs' retaliation, conspiracy and abuse of process claims against defendants Mulvaney, Armstrong, Rutter, Leland and Ezrow remain.

In their complaint, plaintiffs allege that on December 19, 1996, the MDOC created a policy addressing security threat groups (STG). The policy directive was revised on March 6, 2000, and again on April 28, 2003. Plaintiffs claim that this policy is vague and lacks sufficient

specificity to ensure that it is correctly applied to prisoners.  Plaintiff Sullivan alleges that from June of 1999, until May 12, 2003, he was incarcerated at SMF, where he was designated an STG II member as part of the "White Supremacy/Aryan Movement."  This designation was the result of a letter that plaintiff Sullivan had mailed to another prisoner, Guy L. Gerard, #173768. On May 12, 2003, plaintiff Sullivan's STG II designation was removed and plaintiff was transferred to the Robert Cotton Correctional Facility (JCF).

On July 12, 2003, plaintiff Sullivan wrote a letter to plaintiff Wilson, who was confined at LMF, regarding a valid legal agreement between the two prisoners.  Plaintiffs had corresponded for over six years in relation to previous lawsuits, and as friends.  When plaintiff Sullivan's letter arrived at LMF, it was confiscated by defendant Rutter, who sent a copy of the letter to defendant Mulvaney.  Defendant Rutter then sent the original to plaintiff Wilson.  Plaintiffs allege that defendant Mulvaney sent a copy of the letter to defendant Putnam, who submitted a STG II re-designation request to defendant Mulvaney on July 26, 2003.  Defendant Putnam denies receiving a copy of the letter from defendant Mulvaney.  Defendant Putnam did send the re-designation request to Mulvaney.  This request was based on the fact that plaintiff Sullivan had written to plaintiff Wilson, and on the fact that the letter contained racial slurs.

On July 28, 2003, defendant Mulvaney approved the request submitted by defendant Putnam and re-designated plaintiff Sullivan to STG II status.  Shortly thereafter, plaintiff Sullivan was transferred to AMF, where he was interviewed regarding his STG II status.  Plaintiff Sullivan filed a grievance against defendant McNamara, alleging that she intentionally deceived him by stating that he and plaintiff Wilson could correspond so long as their correspondence did not violate

policy.  In response to this grievance, defendant McNamara confirmed plaintiff Sullivan's account of the situation.  When plaintiff Sullivan received this response, he requested that defendant Ezrow submit a request to remove the STG II re-designation.  Defendant Ezrow refused, stating that plaintiff Sullivan's correspondence to plaintiff Wilson should have been confined to legal information.

Plaintiff Sullivan filed a grievance on defendant Ezrow and, in the step II response, defendant Luoma noted that plaintiff Sullivan's letter to plaintiff Wilson did not contain any STG language and did not otherwise violate policy. Defendant Luoma recommended that plaintiff Sullivan's "STG removal" should be submitted.  However, in response to plaintiff Sullivan's step III appeal, defendant Armstrong stated that the letter contained "language advocating racial violence," which warranted plaintiff Sullivan's STG II re-designation.

Plaintiff Sullivan filed a grievance against defendant Ezrow, seeking to discover what authority prevented correspondence between STG prisoners.  At step II, defendant Luoma stated that no policy existed prohibiting such conduct. This response was reiterated at step III.  Plaintiff Sullivan asked defendant Mulvaney to provide him with a list of all groups and prisoners who were designated STG, as well as the authority governing STG correspondence.  Defendant Mulvaney did not respond to plaintiff Sullivan's request, so plaintiff Sullivan filed a grievance directly to Prisoner Affairs. Defendant Armstrong rejected plaintiff Sullivan's grievance, finding no violation.  Plaintiff Sullivan then filed a grievance against defendant Luoma, seeking a list of all STG designated groups and prisoners, as well as the authority governing STG correspondence. The step I respondent indicated that Policy Directive 05.03.118 governed all prisoner mail. Plaintiff Sullivan filed a grievance against defendant Rutter seeking the same information, but his grievance was denied.

On October 10, 2003, defendant Rutter confiscated plaintiff Wilson's outgoing mail, which included legal documents being sent to plaintiff Sullivan. The confiscated documents were related to plaintiffs' ongoing litigation regarding the MDOC's STG policy, and the enforcement of such policy by MDOC employees, including defendants Mulvaney, Rutter, and Putnam. Plaintiffs filed a grievance, asserting that the confiscation was retaliatory and violated the right of access to the courts. Plaintiff Sullivan's grievance was denied at each step, but plaintiff Wilson's step II response by defendant Bouchard confirmed that the documents were not confiscated in accordance with Department policy. Defendant Bouchard ordered the documents returned to plaintiff Wilson.

Plaintiff Sullivan filed a grievance against defendants Mulvaney, Rutter, Putnam and Ezrow directly to Prisoner Affairs, which was rejected by defendant Armstrong. Plaintiff Sullivan was instructed to file the grievance at AMF. However, when plaintiff Sullivan refiled his grievance at AMF, it was rejected as duplicative. Plaintiff Sullivan also filed a grievance against defendant Rutter, claiming that his conduct was in retaliation for plaintiff Sullivan's conduct in assisting plaintiff Wilson with his legal work. Plaintiff Sullivan also claims that defendant Rutter was attempting to interfere with his ability to assist plaintiff Wilson, who was asserting numerous complaints against defendant Rutter. Plaintiff Sullivan filed a grievance against defendant Putnam, charging that he violated his due process rights by submitting a request to have plaintiff Sullivan redesignated as STG II without just cause. This grievance was rejected because it was deemed that the issue had been raised in a prior grievance.

Plaintiff Sullivan filed a step I grievance against defendant Armstrong, stating that he had covered up the wrongdoing of defendants Rutter, Mulvaney, Putnam and Ezrow. Plaintiff Sullivan charged that defendant Armstrong knowingly falsified the contents of his letter to plaintiff

- 4 -

Wilson in stating that the letter contained "language advocating racial violence." Defendant Luoma responded to this grievance by stating that the he did not personally review the letter in question, and noted that the step III response by defendant Armstrong noted that the language in the letter was sufficient for re-designation. Therefore, defendant Luoma upheld the denial of plaintiff's grievance.

Plaintiff Wilson alleges in the complaint that in May of 1998, he was designated as an STG II member, specifically that he was a member of the "Iron Eagle Skinhead" group. The STG designation label was later changed to "White Supremacy/Aryan Movement." While Plaintiff Wilson was incarcerated at HVM, he requested a "formal fact-finding hearing with respect to his STG II designation." This request was denied, and plaintiff Wilson's subsequent grievance regarding this matter was rejected as non-grievable. On April 5, 2003, plaintiff Wilson requested an interview so that he could be considered for removal from the STG II designation. Plaintiff Wilson did not receive a response to this request and subsequently filed a grievance against defendant Prough. The response to this grievance indicated that plaintiff Wilson could not be removed from STG status while in segregation.

Plaintiff Wilson alleges that on July 3, 2003, he filed a step I grievance against defendant Rutter, complaining of defendant Rutter's refusal to give plaintiff Wilson the opportunity to renounce his STG II membership. The step I respondent replied that defendant Rutter was not required to provide plaintiff Wilson with such an opportunity until he felt that plaintiff Wilson had met the requirements for STG designation removal. Plaintiff Wilson's grievance appeals were subsequently denied.

Plaintiff Wilson alleges that on September 15, 2003, he filed a step I grievance claiming that defendant Rutter's conduct was motivated by a desire to retaliate against plaintiff

Wilson because of his legal partnership with plaintiff Sullivan. Plaintiff Wilson's grievance was denied at each level. On October 10, 2003, defendant Rutter confiscated legal documents from plaintiff Wilson's outgoing mail. These documents were addressed to plaintiff Sullivan and were related to plaintiffs' ongoing litigation against defendants Mulvaney, Rutter, and Putnam, as well as other agents of the MDOC. After this confiscation was upheld in an informal hearing, plaintiff Wilson filed a grievance, which was rejected as being duplicative to a grievance filed by plaintiff Sullivan. However, Defendant Bouchard responded to plaintiff Wilson's step II grievance by ordering the documents returned to plaintiff Wilson.

On October 28, 2003, plaintiff Wilson filed a grievance on defendants Bouchard and Rutter for failing to provide him with adequate notice of his mail rights and with a list of all groups and prisoners who are designated as STG members. The step I, II, and III responses to plaintiff Wilson's grievance indicated that "there is no policy which states that you may not correspond - provided the correspondence does not contain any STG language, or does not violate PD 05.03.118 in any way."

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

- 6 -

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Armstrong maintains that his only involvement was in responding to plaintiffs' step III grievances.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Plaintiffs argue that defendant Armstrong should not be dismissed for lack of personal involvement.  However, even plaintiffs concede that defendant Armstrong's only role in this matter was in responding to plaintiffs' grievance.  Plaintiffs believe that once someone is involved in denying a grievance then that person is a wrongdoer who is involved in the alleged deprivation of constitutional rights.  Plaintiffs argue that defendant Armstrong knowingly allowed defendant Mulvaney to use defendant Armstrong's position as a grievance responder to manipulate the grievance response.  However, the act of merely responding to a grievance is not active involvement in the alleged wrong.  By the time the grievance is filed the alleged wrong has already

occurred.  The prison grievance process provides a procedure for prisoners to attempt to resolve disputes.  The process does not assure a correct or even a fair result.  A constitutional claim does not exist to correct an improper grievance outcome.  Defendant Armstrong cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  Defendant Armstrong's involvement in responding to the grievance is insufficient to show personal involvement in the asserted violation of plaintiffs' rights.  It recommended that defendant Armstrong be dismissed from this case.

Plaintiffs argue that the other defendants' actions were in retaliation for plaintiffs' litigation and grievance filings.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, plaintiffs must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendants' alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff Wilson asserts that his sole retaliation claim is based upon defendant Rutter's repeated denial of STG removal consideration.  Plaintiff Wilson has claimed that defendant Rutter has removed other prisoners from the STG designation.  Plaintiff Wilson does not challenge his original STG designation.  Plaintiff Sullivan claims that defendant Mulvaney retaliated against him

by redesignating plaintiff to STG II membership without making findings required by policy. Clearly, plaintiffs have alleged that they engaged in protected conduct by filing grievances and lawsuits.

Plaintiffs' litigation activities and grievance filings constitute protected conduct for purposes of a retaliation analysis. The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at \*2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at \*2 (6th Cir. Nov. 1, 2000). Whether adverse action was taken against plaintiffs is a more difficult question. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). In the opinion of the undersigned, the confiscation of mail, alleged denial of STG renunciation, and denial of STG group list and STG prisoner list are not adverse actions which could support a claim of retaliation. However, the STG designations and continued STG designations could support a claim of adverse action for purposes of supporting a retaliation claim.

However, under the circumstances of this case, plaintiffs cannot show that defendants' conduct was motivated by plaintiffs' past litigation or grievance filings. It is undisputed that plaintiffs have a history of association with the White Supremacist/Aryan Movement. Further, plaintiff Sullivan did write a letter to plaintiff Wilson which, arguably, demonstrated that he still harbored beliefs associated with the White Supremacist/Aryan Movement.

- 9 -

Plaintiffs deny that the letter plaintiff Sullivan wrote to plaintiff Wilson could arguably be interpreted to show that plaintiff Sullivan still harbored beliefs associated with the White Supremacy/Aryan Movement.  Moreover, plaintiffs argue that it does not matter if plaintiff Sullivan still harbored beliefs associated with the White Supremacy/Aryan Movement, because the only issue asserted is whether defendants retaliated against plaintiff.  However, the fact that plaintiff Sullivan wrote a statement in his letter that showed that he still had beliefs in line with the White Supremacy/ Aryan Movement is relevant because the entire point of his retaliation claim is that he should not have a STG designation.  Plaintiffs simply have failed to show that plaintiff Sullivan's STG designation and plaintiff Wilson's continued STG designation were based upon retaliatory conduct as opposed to their own STG behavior which caused the designations.  Defendants followed prison policy under the circumstances.

Plaintiffs argue that they corresponded with each other for a long period of time without any problems until plaintiff Sullivan's STG removal occurred.  Once that happened defendants Rutter and Mulvaney then, for the first time, used the correspondence against the plaintiffs.  Plaintiff Sullivan argues that while he was designated an STG, there existed nothing that defendants could do to retaliate against him because he already was STG designated.  In essence, plaintiff Sullivan has admitted that while he was STG designated there existed no further penalty for his STG beliefs and activities.  However, when he was removed from his STG status, any further STG activities would most likely be scrutinized by prison staff and any violation likely would result in a redesignation.  According to plaintiff Wilson, he has now been removed from the STG designation as of February 2005.  Under these circumstances, plaintiffs have failed to show that a genuine issue of material fact exists to support the claim that their constitutional rights were violated

by defendants.  Plaintiffs simply cannot show that their continued STG designation and STG designations were made in retaliation for protected conduct.

Plaintiffs also claim that defendant Rutter confiscated their legal documents when he confiscated their mail.  Plaintiffs have asserted that confiscation of legal documents sent between them could qualify as adverse conduct necessary to support a retaliation claim.  However, not every letter written between prisoners is a legal document.  Plaintiffs have not shown that their documents were "legal" in nature.  Some of the letters plaintiffs wrote between each other allegedly contained other personal information that could not be categorized as legal.  Plaintiffs admit that their relationship extended beyond their legal agreement.  Assuming that the documents were legal documents, plaintiffs need to show not only that they could possess the documents under prison policy, but that defendant Rutter took the documents because of plaintiffs' past grievance or litigation activities.  Moreover, defendant Rutter believed that some of the confiscated documents violated prison rules that prohibited prisoners from obtaining their files or files of other prisoners through the Freedom of Information Act, and other documents were confiscated to show that plaintiffs continued to engage in STG activities.  The documents were confiscated solely for security reasons.  Plaintiffs similarly cannot support their conspiracy claims, state law claims or overcome defendants' entitlement to the qualified immunity defense.

Plaintiffs argue that defendants conspired to violate plaintiffs' constitutional rights. Defendants, however, simply followed policy in designating plaintiffs as STG members.  There exists no evidence that defendants violated plaintiffs' constitutional rights.  Further, defendants are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, there exists no factual dispute which could defeat a qualified immunity defense. The facts show that defendants acted appropriately in designating plaintiffs as STG members. Plaintiffs cannot show that defendants retaliated against plaintiffs for prior litigation or grievance filings.

Plaintiffs have also brought a state law abuse of process claim.  To the extent that plaintiffs are claiming their state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims.  Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration.  In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

Plaintiffs filed a motion for preliminary injunction, requesting that the court order defendants to stop harassing plaintiffs and retaliating against plaintiffs.  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).  In exercising that discretion, the court must consider and balance four factors:

    1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

    2.  Whether the movant has shown irreparable injury.

    3.  Whether the preliminary injunction could harm third parties.

    4.  Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).

These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison

setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiffs' "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiffs' claim that the defendants have violated their federal rights. Furthermore, plaintiffs have failed to establish that they will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here. Because plaintiffs have failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiffs' motion for a temporary restraining order be denied.

Accordingly, it is recommended that defendants' motion for summary judgment (docket #19) be granted, dismissing this case in its entirety. It is further recommended that plaintiffs' motion for preliminary injunction (docket #30), motion to compel defendant Armstrong to resolve

plaintiff Sullivan's Step III grievance (docket #39), motion for hearing (docket #46), motion to strike (docket #49), motion to supplement (docket #52), motion for judicial notice (docket #56), and motion to amend their complaint (docket #70) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

*NOTICE TO PARTIES*: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 10, 2005

- 17 -